# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL HOWARD,** : | |
| Plaintiff, : | |
| v. : | |
| : | **CIVIL ACTION NO. 18-3997** |
| **CHESTER COUNTY OFFICE OF** : | |
| **JUVENILE PROBATION AND** : | |
| **PAROLE, et al.,** : | |
| : | |
| Defendants. : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                              **August 30, 2019**

*Pro se* Plaintiff Daniel Howard has filed this civil action asserting constitutional, statutory, and common law claims against Defendants based on their alleged failure to notify his father of his arrest and subsequent court proceedings when he was a minor, and the purportedly improper implementation and use of his Individualized Education Program ("IEP"). All Defendants, except for the Easttown Township Police Department and Officer Kevin Price, have moved to dismiss this case for lack of subject matter jurisdiction and for failure to state a claim. For the reasons that follow, the motions will be granted. Further, as Plaintiff has failed to state a claim against the Easttown Township Police Department and Officer Kevin Price, the claims against these Defendants will be dismissed as well.[1]

---

[1] These Defendants appear to have been served, but have not responded to Plaintiff's Complaint. [Doc. No. 12] at 1, 8. Although these Defendants have not responded to the Complaint, 28 U.S.C. § 1915(e)(2) provides that, as to proceedings *in forma pauperis*, such as the instant action [Doc. No. 5], "the court shall dismiss the case at any time if the court determines that …. the action … fails to state a claim on which relief may be granted."

**I. Background**

The following facts alleged in the Complaint are assumed to be true for purposes of the motion to dismiss.[2] Plaintiff Daniel Howard alleges that when he was a minor, he damaged a car during a game of tag and police responded to the incident.[3] Police held Plaintiff at the scene, and Officer Kevin Price called Plaintiff's home where he lived with his father and grandmother, Beverly Miles, but only Miles was home. Miles allegedly told Officer Price that she was not Plaintiff's parent or guardian, but she responded to the scene and brought Plaintiff home. Plaintiff admits that he "could have called his father[']s cell phone and directly contacted his father," but he did not; he wanted to "prevent [his] father from finding out about the arrest … because at the time he did not want to get into trouble with his father."[4] Following the incident, Plaintiff asserts that Miles was contacted by police and instructed that if she failed to pay for the damages to the car, charges would be filed against Plaintiff. Miles was unable to pay for the damages, and ultimately, Defendant Juvenile Probation Officer Melissa Creedon issued a summons for Miles and Plaintiff to appear in court.

At the time of the summons, Plaintiff was in Maryland with his father, who, upon learning of the incident, "was angry and told [Miles] that she wasn't taking his son, plaintiff, to court because he was not notified by the police or by the court of the incident."[5] While Plaintiff's father was at work, Plaintiff's aunt and uncle drove to Maryland and brought Plaintiff back to Pennsylvania, where Miles then took him to a juvenile court proceeding. Miles informed

---

[2] It should be noted that Plaintiff raises the same claims and allegations as his father did in *Howard v. Chester County Office of Juvenile Probation and Parole, et al.*, Civil Action No. 18-2209, and portions of Plaintiff's Complaint are identical to his father's complaint. The Court has not based any rulings herein, or based any analysis in this Memorandum, on his father's complaints and amended complaints, the ultimate dismissal of his father's case, and the preliminary injunction hearing in that case and the testimony and evidence adduced therefrom.

[3] Plaintiff does not allege when any of these alleged events took place.

[4] Compl. ¶54.

[5] *Id.* ¶ 27.

Plaintiff's mother about the hearing as well, and "told her that she had to attend."[6] Defendant Vincent DiFabio, an attorney retained by Plaintiff's aunt and Miles, represented Plaintiff at this hearing.

Prior to the second juvenile court proceeding in February 2018, Plaintiff's father wrote a letter to the juvenile court explaining that he was Plaintiff's guardian and that the hearing was illegal because he had not been contacted. Defendant Keith DiFabio, an attorney who represented Plaintiff at this second juvenile court proceeding, shared this letter with Defendant Juvenile Probation Officers Melissa Creedon and Jamie Durning, and Plaintiff alleges that these Defendants hid the letter from the court and told Plaintiff that the "letter wouldn't matter."[7]

Plaintiff ultimately was adjudicated delinquent, placed on probation, and ordered to enter residential treatment.[8] Plaintiff argues that Defendants' failure to notify his father was a violation of his due process and equal protection rights, thus rendering the court proceedings and the juvenile court's orders unlawful.

Plaintiff also alleges a conspiracy among Defendants relating to his IEP. Specifically, he contends that the School District sought to have more black children than white children on IEPs in order to obtain government subsidies, place black children at a disadvantage, and "prepare [them] for the industrial prison complex."[9] According to Plaintiff, his father sought to have him removed from his IEP, but the school resisted these efforts and had "someone else" sign off on the continuation of the IEP. Plaintiff also alleges that police are more inclined to treat a child harshly if they discover the child has an IEP; however, Plaintiff does not allege that any police

---

[6] *Id.* ¶ 31.

[7] *Id.* ¶ 36.

[8] *Id.* ¶ 49; Office of Juvenile Probation and Parole Mot. to Dismiss [Doc. No. 15] at 3.

[9] Compl. ¶ 51.

officer involved in the facts of this case ever asked him about an IEP or knew that he was a student with an IEP, nor does Plaintiff allege that his IEP influenced how he was treated ultimately in this case.

II. **Legal Standard**

   **A. Federal Rule 12(b)(1)**

A defendant may move to dismiss a civil action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[10] The plaintiff, then, bears the burden of establishing subject matter jurisdiction.[11] In considering the 12(b)(1) motion, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[12] A court may "make factual findings, beyond the pleadings, that [are] decisive to determining jurisdiction."[13] If the Court determines that it lacks subject matter jurisdiction, Federal Rule of Civil Procedure 12(h)(3) requires dismissal.[14]

   **B. Federal Rule 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[15] and "enough facts to raise a reasonable

---

[10] Fed. R. Civ. P. 12(b)(1).

[11] *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

[12] *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

[13] *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) (citation omitted).

[14] Fed. R. Civ. P. 12(h)(3).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011).

expectation that discovery will reveal evidence of the necessary element" of a claim.[16] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."[17] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[18]

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[19] Although the Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[20] it "need not accept as true 'unsupported conclusions and unwarranted inferences,'"[21] or the plaintiff's "bald assertions" or "legal conclusions."[22] A *pro se* plaintiff's pleadings should be "liberally construed."[23]

---

[16] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[17] *Twombly*, 550 U.S. at 555 (citations omitted).

[18] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. *See Twombly*, 550 U.S. at 556, 558-59.

[19] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

[20] *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

[21] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[22] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (quotation marks omitted).

[23] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## III. Discussion

### A. Federal Constitutional Claims Under 42 U.S.C. § 1983

Plaintiff alleges violations of the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the Constitution against the Chester County Office of Juvenile Probation and Parole, Officers Creedon and Durning in their official and individual capacities, the Tredyffrin Easttown School, as well as the Police Department and Officer Price. Plaintiff also alleges a Sixth Amendment violation by the Law Office of Platt, DiGiorgio, and DiFabio, and its attorneys Vincent DiFabio and Keith DiFabio.

*1. Chester County Office of Juvenile Probation and Officers Creedon and Durning in their Official Capacities*

Plaintiff's constitutional claims for damages against the Chester County Office of Juvenile Probation and Probation and Officers Creedon and Durning in their official capacities must be dismissed with prejudice. The Eleventh Amendment provides immunity to "subunits of the State," which, according to the Third Circuit, include the County Probation and Parole Departments.[24] Because a suit against a state officer in his or her official capacity is "no different from a suit against the State itself," the probation officers are also afforded this Eleventh Amendment immunity.[25] This immunity shields the Chester County Office of Juvenile Probation and the probation officers in their official capacity from Plaintiff's damages claims under § 1983.[26] This Eleventh Amendment immunity also extends to Plaintiff's claims under the

---

[24] *Perez v. Borough of Berwick*, 507 F. App'x 186, 189-90 (3d Cir. 2012).

[25] *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

[26] *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. § 1983 does not override Eleventh Amendment immunity).

6

Pennsylvania Constitution and under §§ 1985 and 1986, although those claims fail against all Defendants for unrelated reasons as well, as explained below.[27]

Plaintiff has also brought claims for injunctive relief against these Defendants, and although these claims are not barred by the Eleventh Amendment, they will be dismissed. First, Plaintiff seeks an order requiring the Office of Juvenile Probation to adopt guidelines and policies relating to parental notification when a juvenile damages property. Plaintiff lacks standing to pursue such injunctive relief, as he is no longer a minor, and there is no threat that such alleged conduct by Defendants will again cause him injury.[28]

Second, Plaintiff requests that the Court enjoin the Office of Juvenile Probation from enforcing any further actions against Plaintiff. Although Plaintiff does not specify what "these actions" refer to, he appears to seek to have the juvenile court's adjudication of him that resulted in a term of probation overturned, because Plaintiff contends that the judgments and order of the state court should be "halted and nullified" as they have been made without notice to his father.[29] Such a claim must be dismissed as an improper collateral attack on his state court adjudication. The Supreme Court held in *Heck v. Humprhey*,[30] that a plaintiff may not bring a cognizable § 1983 claim if a judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction or sentence" in state court, unless the plaintiff can show that the conviction or

---

[27] *See Irizarry v. Com. Of Pa., Dept. of Transp.*, No. A. 98–6180, 1999 WL 269917, at *5 (E.D. Pa. Apr. 19, 1999) ("The Commonwealth has not expressly waived its Eleventh Amendment immunity to be sued in federal court under the Pennsylvania Constitution or for intentional torts."); *Collins v. Sload*, 212 F. App'x 136, 140 n.5 (3d Cir. 2007) ("Eleventh Amendment immunity provided the defendants a similar shield against the claims for damages against them in their official capacities under §§ 1983, 1985, & 1986.").

[28] *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–106 (1983); *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) ("To satisfy the standing and case or controversy requirements of Article III, a party seeking a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." (internal quotations and citation omitted)).

[29] Compl. at 30.

[30] 512 U.S. 477 (1994).

7

sentence has been invalidated.[31] Heck's bar applies equally to claims for juvenile adjudication and for injunctive relief.[32] Plaintiff has not shown that his adjudication has been called into question, and therefore his effort to "nullif[y]" the juvenile court's adjudication in federal court is improper.

Additionally, to the extent Plaintiff's juvenile court proceedings are ongoing, as the Office of Juvenile Probation and Parole contends they are,[33] Plaintiff's claim for injunctive relief would be barred by the *Younger* abstention doctrine.[34] Under this doctrine, a federal court must abstain from on-going state proceedings that implicate important state interest and afford an adequate opportunity to raise federal claims.[35] Delinquency cases certainly involve important state interests and afford an adequate opportunity to raise constitutional claims,[36] and, if Plaintiff's juvenile court proceedings are indeed ongoing, the *Younger* doctrine would require this Court to abstain from interfering with the juvenile court proceedings. This claim for injunctive relief will be dismissed without prejudice.[37]

---

[31] *Id.* at 486–487. Specifically, the plaintiff must prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.*

[32] *See, e.g., Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002); *Eubank v. Ghee*, No. 98-4314, 1999 WL 1045238, at *1 (6th Cir. 1999) ("The holding in *Heck* applies regardless of whether the plaintiff seeks injunctive or monetary relief."); *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 201 (S.D.N.Y. 2004).

[33] The Office of Juvenile Parole and Probation contends that his delinquency case is ongoing, as "there was a dispositional review hearing on September 11, [2018], and the case is still pending." Mot. to Dismiss [Doc. No. 15] at 9.

[34] *See Younger v. Harris*, 401 U.S. 37 (1971).

[35] *Anthony v. Council*, 316 F.3d 412, 418 (3d Cir. 2003).

[36] *See In re R.M.*, 790 A.2d 300, 304–05 (Pa. 2002) ("Although by design juvenile proceedings are characterized by a degree of informality and flexibility, where constitutionally protected interests are at stake, the Due Process Clauses of the United States Constitution impose a requirement of fundamental fairness.").

[37] "[C]laims denied on *Heck* grounds are without prejudice." *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 143 n.4 (3d Cir. 2016).

*2. Officers Creedon and Durning in Their Individual Capacities*

Plaintiff alleges that Probation Officers Creedon and Durning, in their individual capacities, violated Plaintiff's constitutional rights by failing to formally notify his father of the court proceedings involving Plaintiff and by ignoring the letter allegedly provided to them that indicated that Miles was not Plaintiff's guardian.[38]

Ordinarily, government officials are shielded from civil liability for damages through the doctrine of qualified immunity, unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known."[39] A law is clearly established when the boundaries of the right are so clear such that a reasonable official would have known that his conduct violated that right.[40] Determining the contours of the right does not require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[41]

Plaintiff alleges that the juvenile court's failure to notify his father about the juvenile court proceedings violated his due process rights. However, any invocation of due process protections regarding Plaintiff's right to have his father notified about his juvenile proceedings cannot be viewed as "clearly established" so as to deprive Defendants of qualified immunity. Defendants sent notice of Plaintiff's hearings to Miles, at the address where Plaintiff and his father were also allegedly living. Numerous family members attended the hearings, including Plaintiff's mother and grandmother, and Plaintiff was represented by counsel who had been hired by his family. Notably, as alleged in the Complaint, Plaintiff's father chose not to attend the

---

[38] Compl. ¶ 45.

[39] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

[40] *Ashcroft v. Al-kidd*, 563 U.S. 731, 741 (2011).

[41] *Id.*

hearings, despite being aware of them,[42] and there are no allegations that court officials were aware of any address for Plaintiff's father other than Miles's home. Instead, Plaintiff initially chose not to provide the police with his father's contact information or inform his father about the arrest because he feared his reaction. Creedon and Durning's purported failure to go to greater lengths to notify Plaintiff's father personally does not violate any clearly established right of Plaintiff, and this claim will be dismissed.

Additionally, Plaintiff's Eighth Amendment claim fails. Plaintiff asserts in his Complaint that this claim as against "all defendants," however, as it concerns solely his treatment following his adjudication, the Court construes it as a claim solely against the probation officers in their individual capacity. To make out an Eighth Amendment claim, a plaintiff must show that punishment has been imposed in a manner which includes "elements of severity, arbitrary infliction, unacceptability in terms of contemporary standards, or gross disproportion."[43] Plaintiff's general claim that he was "placed on probation, house arrest, ankle monitors, counseling, juvenile detention and eventually removed from his home and placed in county facilities" falls short of this standard. Further, such conduct violates no clearly established right of Plaintiff under the Eighth Amendment, and this claim will be dismissed as well.

   *3. Tredyffrin Easttown School District*

Plaintiff alleges that the Defendant Tredyffrin Easttown School District's implementation of his IEP was flawed and violated his constitutional rights, in that the School District allegedly resisted Plaintiff's father's repeated attempts to remove him from his IEP program, improperly permitted someone other than his guardian to sign his IEP form, and released private information

---

[42] Plaintiff alleges that Miles told Plaintiff's father about the arrest and the court hearing prior to the first court hearing. Compl. ¶ 27.

[43] *Ingraham v. Wright*, 430 U.S. 651, 658 (1977).

contained in the IEP to the juvenile court without notification to Plaintiff's father.[44] Plaintiff also brings an equal protection claim against the School District, alleging that it has a "racially motivated practice" of placing African American students on IEPs.[45]

First, Plaintiff's claims relating to the continuation of the IEP without his father's permission will be dismissed for lack of jurisdiction due to Plaintiff's failure to allege that he has exhausted the available administrative remedies.[46] The Individuals with Disabilities Education Act ("IDEA") guarantees that children with disabilities receive a "free appropriate public education,"[47] and provides an administrative process for children and their families to enforce this guarantee, which an individual must exhaust before seeking judicial review.[48] The exhaustion requirement for IDEA claims applies, not only to claims labeled as such, but to all claims for relief available under the IDEA, even if a claim arises under a different cause of action.[49] In evaluating whether a plaintiff seeks relief for denial of appropriate education, "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint."[50] Where the gravamen of a complaint is the denial of a free appropriate public education, a plaintiff "cannot escape [the exhaustion requirement] merely by bringing [the] suit under a statute other than the IDEA."[51] Here, the gravamen of Plaintiff's allegations relating to the purportedly improper continuation of his IEP program is the denial of appropriate public education, and Plaintiff

---

[44] Compl. ¶ 52.

[45] *Id.* ¶ 51.

[46] *Batchelor v. Rose Tree Media School Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) ("In the normal case, exhausting the IDEA's administrative process is required in order for the statute to 'grant[ ] subject matter jurisdiction to the district court [ ].'" (quoting *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)).

[47] 20 U.S.C. § 1415.

[48] *Batchelor*, 759 F.3d at 272.

[49] *Jeremy H. by Hunter v. Mount Lebanon School Dist.*, 95 F.3d 272, 281 (3d Cir. 1996); 20 U.S.C. § 1415(f).

[50] *Fry v. Napoleon Comm. Schools*, 137 S.Ct. 743, 755 (2017).

[51] *Id.* at 754.

therefore must pursue administrative remedies before bringing such a claim in this Court. Plaintiff has not indicated that he has pursued any such remedies, and thus this Court lacks jurisdiction over this claim. This claim will be dismissed without prejudice, and with leave to amend and refile, once Plaintiff has exhausted the available administrative remedies.

Additionally, the School District correctly asserts that it is considered a municipality,[52] and thus Plaintiff must allege that his injury was a result of a policy or custom.[53] Thus, regardless of the jurisdictional deficiency, Plaintiff's failure to allege that any of the decisions regarding the implementation of his IEP—including the continuation of his IEP, or the decision to release private information in the IEP to a third party—were based on a policy, practice, or custom, warrants the dismissal of these claims without prejudice.

Plaintiff's equal protection claim against the School District is not subject to the IDEA's exhaustion requirement, as it does not concern a denial of appropriate education, but rather alleged racial discrimination causing him harm unrelated to his education,[54] and the Court will consider this claim separately. This claim will be dismissed as Plaintiff has failed to state an equal protection violation. To state a § 1983 claim based on an equal protection violation, a complaint must allege that the plaintiff is a "member[] of a protected class and that [he] received different treatment than that received by other similarly-situated individuals."[55] Bare allegations of a disparate impact are insufficient; plaintiff must allege that the "defendant intended to

---

[52] *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (school districts are "local governing bodies" and their liability is limited by *Monell*).

[53] *Monell v. Dep't. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("Policy is made when a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials [are] so permanently and well-settled as to virtually constitute law." (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[54] Although Defendant School District has argued that the exhaustion requirement applies to all of Plaintiff's constitutional claims, Defendant does not specifically explain why the gravamen of Plaintiff's equal protection claim should be construed as a denial of appropriate education.

[55] *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).

discriminate in a manner that led to the disparate effect."[56] Here, Plaintiff has failed to allege that he was treated differently from similarly situated others. Notably, although Plaintiff alleges that his father tried to remove him from his IEP, he does not actually allege that he lacks a disability such that his IEP may be inappropriate. Additionally, he admits that white children with disabilities are on IEPs and does not allege that a white child similarly situated to him would not have been put on an IEP. Plaintiff also fails to allege any facts that would show that Defendants possessed a discriminatory motivation in implementing their IEP program. For example, Plaintiff vaguely suggests that the school is motivated by government subsidies and to put black students "in a disadvantageous position early in life," but without any alleged facts to support these beliefs, such allegations do not "raise a right to relief above the speculation level."[57]

Thus, Plaintiff's conclusory allegation that the School District has a pattern or practice of employing IEPs to disadvantage black children in his county, without facts to support it, fails to state a plausible cause of action. Plaintiff's constitutional claims against the School District will thus be dismissed without prejudice, and with leave to amend.[58]

### 4. Platt, DiGiorgio and DiFabio Law Firm, and Attorneys Vincent DiFabio and Keith DiFabio

Plaintiff asserts that Vincent DiFabio and Keith DiFabio, in conjunction with their law firm, violated Plaintiff's Sixth Amendment right to counsel because they colluded with other Defendants for the purpose of hiding from the court the fact that Beverly Miles was not

---

[56] *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 393 (E.D. Pa. 2007).

[57] *Twombly*, 550 U.S. at 555.

[58] The Third Circuit has instructed that if a compliant is vulnerable to a 12(b)(6) dismissal, the court must permit a curative amendment where it would not be inequitable or futile. *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Here, as Plaintiff's equal protection claim is dismissed for failure to allege facts that would permit an inference of discrimination, this claim will be dismissed without prejudice and with leave to amend. Plaintiff's other constitutional claims, although vaguely pleaded, will also be dismissed without prejudice, as federal courts generally dismiss without prejudice claims that have failed to meet the exhaustion requirement. *Lines v. Larkins*, 208 F.3d 153, 159–60 (3d Cir. 2000).

Plaintiff's parent.[59] Plaintiff fails to state a claim under § 1983 because defense attorneys do not act under the color of state law when representing their client.[60] Although "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights,"[61] Plaintiff has only made conclusory allegations of conspiracy among Defendants, and has not alleged the existence of any agreement among Defendants. The only specific allegation relating to Defendant attorneys' participation in a conspiracy is that they, along with Creedon and Durning, did not provide Plaintiff's father's letter to the juvenile court because they believed it would not alter the course of the proceedings. This is not a basis for any plausible claim against the attorneys under § 1983 and the claim will be dismissed without prejudice.

  5. *Easttown Township Police Department and Officer Kevin Price*

Finally, Plaintiff fails to state a claim under § 1983 against the Police Department and Officer Kevin Price. Plaintiff claims that the police violated his constitutional rights when they failed to notify Plaintiff's father. Yet, Plaintiff's Complaint includes his acknowledgment that he asked the police to call Miles, rather than his father, because he was afraid of how his father would react. Moreover, the police's action of calling the home where Plaintiff resided and releasing him to his grandmother to take him home, rather than into juvenile detention, does not violate any constitutional right of Plaintiff. Plaintiff's § 1983 claim against the Police Department and Officer Kevin Price will be dismissed with prejudice.

---

[59] Compl. ¶ 62.

[60] 42 U.S.C. § 1983 (imposing liability on a party who, acting under the color of law, deprives another individual of rights, privileges, or immunities); *Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir. 1986) (per curium) (holding that an attorney appointed to represent a minor in a juvenile delinquency proceeding does not act under color of state law for the purpose of a Section 1983 claim); *Steward v. Meeker*, 459 F.2d 669, 669–70 (3d Cir. 1972) (privately retained counsel is not acting under color of state law when representing a client); *Butler v. Silvis*, No. 09–1394, 2009 WL 4723295, at *2 n.1 (W.D. Pa. Dec. 2, 2009) ("a criminal defense attorney is not acting under color of state law for purposes of 42 U.S.C. § 1983").

[61] *Tower v. Glover*, 467 U.S. 914, 920 (1984).

**B. Federal Claims Under 42 U.S.C. §§ 1985, 1986**

Section 1985(3) allows civil actions against individuals who conspire "for the purposes of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[62] To assert a claim under § 1985(3), a plaintiff must allege a conspiracy, the purpose of which is to deprive a person of the equal protection of the laws or of equal privileges and immunities under the law.[63] "[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."[64] Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim.[65] The plaintiff must also allege specific facts to state a plausible claim that an actual agreement existed among the defendants.[66]

Here, Plaintiff alleges that all Defendants worked together to cause harm to him, as part of a system set up to hurt black children. Plaintiff fails to support this conclusory statement with any factual allegations to suggest that any Defendants were motivated by discriminatory animus, and moreover, Plaintiff does not allege the existence of any agreement between any of the parties. Plaintiff's § 1985 claim thus fails. As a violation of § 1986 cannot be established without first showing a violation of § 1985, Plaintiff's § 1986 claim fails as well. These claims will be dismissed.[67]

---

[62] 42 U.S.C. § 1985(3).

[63] *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

[64] *Id.* at 135.

[65] *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (internal quotations and citation omitted).

[66] *Muhammad v. Cappellini*, 477 F. App'x 935, 938 (3d Cir. 2012).

[67] This claim is dismissed with prejudice as to the Office of Juvenile Probation and Parole, and Creedon and Durning in their official capacities, as these Defendants are immune under the Eleventh Amendment.

## C. Federal Statutory Claims Relating to Privacy and Disability

Plaintiff alleges that the Chester County Office of Juvenile Probation and Parole, Officers Creedon and Durning, and the Tredyffrin Easttown School District, released "private, sensitive information" about Plaintiff's disability to the court without notification to his parents. Plaintiff alleges this action violates four federal statutes: The Families Educational Rights and Privacy Act ("FERPA"), the Privacy Act of 1974, the Individuals with Disabilities Education Act ("IDEA"), and the Americans with Disabilities Act ("ADA"). Plaintiff's claims under each of these statutes fail and will be dismissed.

First, FERPA does not create a private right of action and the statute is not enforceable by § 1983.[68]

Second, the Privacy Act of 1974 does not apply to state or municipal agencies or their employees, and therefore Plaintiff cannot bring such a claim against the Office of Chester County Office of Juvenile Probation and Parole, Officers Creedon and Durning or the Tredyffrin Easttown School District.[69]

Third, Plaintiff has not shown that his allegations regarding the Office of Juvenile Probation's receipt of Plaintiff's IEP records is cognizable under the IDEA, which ensures "that all children with disabilities have available to them a free appropriate public education."[70] As previously stated, the IDEA provides for administrative procedures to enforce the rights it created, and consequently, an IDEA claim cannot be brought in federal court until the administrative process has been exhausted.[71] Plaintiff does not suggest that he has pursued any

---

[68] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287–89 (2002).

[69] *Hatfield v. Berube*, 714 F. App'x 99, 106 (3d Cir. 2017)

[70] 20 U.S.C. § 1400(d)(1)(A).

[71] 20 U.S.C. § 1415(i)(2)(A); *Batchelor*, 759 F.3d at 272.

16

administrative proceedings to address any of the issues he now raises, and his claim under the IDEA will therefore be dismissed without prejudice and with leave to amend.[72]

Finally, the ADA prohibits discrimination by a "public entity" against a "qualified individual with a disability."[73] In order to state a claim under Title II of the ADA, Plaintiff must show (1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs or activities of a public entity or was subjected to discrimination by any such entity; (4) by reason of his disability.[74] Plaintiff fails to allege sufficient facts to state a claim under the ADA. First, Plaintiff does not necessarily allege that he has a disability, but instead cites his "alleged disability," which he appears to suggest was fabricated by the School District in order to put him on an IEP.[75] Additionally, Plaintiff does not allege facts to show that the School District denied him the benefits of its services, programs or activities. Moreover, Plaintiff does not allege facts that show he was discriminated against because of a disability. This claim will be dismissed without prejudice and with leave to amend.

**D. State Law Claims**

*1. Pennsylvania Constitution*

Plaintiff brought a claim under Article 1 §§ 8 and 26 of the Pennsylvania Constitution; however, as the Third Circuit has held that "[t]he prevailing view is that Pennsylvania does not

---

[72] Federal courts generally dismiss without prejudice claims that have failed to meet the exhaustion requirement. *Larkins*, 208 F.3d at 159–60.

[73] 42 U.S.C. § 12132.

[74] *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 n. 32 (3d Cir. 2007).

[75] Compl. ¶ 58. Without making it clear that Plaintiff actually has a disability, Plaintiff cannot sue under the ADA.

17

recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution," these claims will be dismissed with prejudice.[76]

*2. Negligence*

Finally, Plaintiff brings a negligence claim against the law firm Platt, DiGiorgio, and DiFabio, as well as attorneys Vincent DiFabio and Keith DiFabio, alleging that "their actions fell below the level of conduct required of attorneys in Pennsylvania."[77] Plaintiff further alleges that they colluded with other Defendants in denying Plaintiff his constitutional rights, which constitutes negligence.[78] Under Pennsylvania law, to establish a case of legal malpractice in the context of criminal proceedings, a plaintiff must show (1) employment of the attorney; (2) reckless or wanton disregard of the defendant's interest on the part of the attorney; (3) the attorney's culpable conduct was the proximate cause of an injury suffered by the Plaintiff; (4) as a result of the injury, the plaintiff suffered damages; and (5) plaintiff will not prevail in a criminal malpractice suit unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error.[79] For this cause of action, an attorney is liable if plaintiff would have been acquitted or the charges would have been completely dismissed, if not for the negligent conduct.[80]

Plaintiff alleges that Defendant attorneys were given a letter explaining that Plaintiff's father was not present, that they provided this letter to Officer Creedon and Durning, but then failed to give the letter to the court directly. Plaintiff does not allege that, had this letter been

---

[76] *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.7 (3d Cir. 2008); *see also Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 678–79 (E.D. Pa. 2017) ("The Court … will decline to create a private right of action under the Pennsylvania Constitution where one has not already been recognized by an authoritative court.").

[77] Compl. ¶ 63.

[78] *Id.*

[79] *Bailey v. Tucker*, 621 A.2d 108, 115 (Pa. 1993).

[80] *Id.*

produced, Plaintiff would not have been placed on probation or that the outcome of the hearing would have otherwise been different.[81] Nor does Plaintiff allege that he has pursued post-trial remedies or obtained relief based on attorney error. The attorneys' decision not to provide this letter to the court cannot be found to be in "reckless or wanton disregard" of Plaintiff's rights, or the cause of any harm to Plaintiff, and this claim will be dismissed with prejudice. [82]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted. An appropriate order follows.

---

[81] Compl. ¶ 1.

[82] Even if the heightened standard articulated in *Bailey* does not apply to juvenile adjudications, which the Court believes it should, Plaintiff fails to satisfy the causation requirement, which is necessary for any claim based in negligence. Plaintiff does not contend that he is actually innocent of the conduct for which he was adjudicated, and he cannot show that his attorneys' decision not to inform the judge of the contents of Plaintiff's father's letter would have altered the course of the adjudication.